IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>PHYLLIS M. ECHOLS,</td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>CIVIL NO.: WDQ-13-3156</td></tr>
<tr><td>LIVING CLASSROOMS FOUNDATION, INC.,</td><td>*</td><td></td></tr>
<tr><td>Defendant.</td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Phyllis Echols, *pro se*, sued Living Classrooms Foundation, Inc., ("LCF") for race, religious, and other discrimination. ECF No. 1.  Pending is LCF's unopposed[1] motion to dismiss for failure to state a claim, and for lack of subject matter jurisdiction, or, for summary judgment.  ECF No. 8.  No hearing is necessary. Local Rule 105.6 (D. Md. 2014).  For the following reasons, LCF's motion for summary judgment on Echols's discrimination and retaliation claims, and its motion to dismiss

---

[1] On March 21, 2014, a Rule 12/56 letter was mailed to Echols. ECF No. 9. The letter informed her that LCF had filed a motion to dismiss, or, for summary judgment, and that "if granted, it could result in the dismissal of [her] case or the entry of judgment against [her]." *Id.* The letter further advised Echols of her right to file a response to the motion. *Id.*

Echols's Genetic Information Nondiscrimination Act ("GINA")[2] claim for lack of subject matter jurisdiction, will be granted.

I.   Background[3]

LCF is a nonprofit educational organization that promotes "hands-on learning"[4] for youth in the Baltimore-Washington metropolitan area.  ECF No. 8-1 at 2.  In April 2011, LCF hired Echols, an African American, as Staff Accountant.  ECF No. 1-2 at 6.

On Echols's first day at LCF, Cindy Wadalavage, Grant Accountant, told Echols "that she never knew black accountants[] existed."  ECF No. 1 at 5.  Accounting staff refused to greet or speak to Echols; for the first three months of Echols's

---

[2] Pub. L. No. 110-233, § 2, 122 Stat. 881 (2008) (codified as amended in scattered sections of Title 29 and Title 42 of the United States Code).

[3] The facts are from Echols's complaint and exhibits, ECF Nos. 1, 1-1, 1-2, and LCF's motion and exhibits, ECF Nos. 8, 8-1, 8-2, 8-3.  In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] LCF describes its "hands-on" approach as "[e]ducating students through after-school and supplemental education programs, [and] through environmental, maritime heritage, and health and wellness experiences."  *See* Living Classrooms: Learning by Doing, *About Us*, https://www.livingclassrooms.org/aboutus.php (last accessed Nov. 25, 2014).  LCF relies on "living classrooms," located at "various campuses, including maritime museums and ships, and in neighborhood and community settings." *Id.*

2

employment, only Deborah Zell, the Controller, would speak to her. *Id.*

On August 22, 2011, Echols was approached by Julie Bolster, Payroll Specialist, about Echols's changing of the payroll system password while Bolster was on vacation. *Id.* When prompted by the system, Echols had changed the password from "SadieCat10" to "love1GOD." *Id.* at 6. Offended by the religious reference, Bolster yelled at Echols, stating that she should have changed the password to "SadieCat11." *Id.* Bolster and Echols argued, and Bolster and Wadalavage told Echols to "shut up." *Id.* Bob Sandler, Chief Financial Officer, intervened to end the argument. *Id.* Sandler met with Echols to express his discomfort with Bolster's and Wadalavage's behavior, and said he would not tolerate such behavior. *Id.* Sandler also met with Bolster and Wadalavage. *Id.*[5]

On October 17, 2011, when Echols asked coworker, Phil Colcoh, for certain bank entries that needed reconciliation, Wadalavage interrupted to ask why Echols needed those entries. *Id.* at 7. Echols told Wadalavage that she was speaking to Colcoh, and Wadalavage should "attend to the affairs of her desk." *Id.* Wadalavage continued to challenge Echols's need for the entries, to which Echols responded, "if [Wadalavage] knew

---

[5] On October 14, 2011, Echols told Anna Vianna, the Accounts Payable Coordinator, that "[Vianna] would never . . . survive in the corporate world." ECF Nos. 1-2 at 6; 8-1 at 2-3.

how to reconcile the bank accounts, why [were they] not reconciled in her 2 or 3 year tenure in this position[?]" *Id.* Echols met with Sandler to complain about Wadalavage's behavior. *Id.* Later that day, Wadalavage slammed a stack of folders onto Echols's desk; Echols then slammed the folders onto the desk behind her. *Id.*

On October 18, 2011, Echols and Wadalavage argued when Echols performed corrected computer entries while Wadalavage was entering other information into the system; Wadalavage was prevented from successfully completing her entries. *Id.* Wadalavage yelled at Echols to "Shut Up! Shut Up!," to which Echols responded that she was not Wadalavage's child. *Id.* Bolster and Wadalavage then told Echols to "Shut Up! Shut Up!" *Id.* Echols reported the incident to Zell, who informed her that she "should try to remain calm or [she] may lose [her] job." *Id.* Wadalavage apologized to Echols, then waved her right hand at Echols stating "I have no more to say!" *Id.* After a break, Wadalavage told Echols "[your] black ass is out of here." *Id.* Echols left work early because she "felt light headed, [her] heart was beating fast[,] and [her] hands were shaking." *Id.*

On October 19, 2011, Echols saw her physician. *Id.* She was diagnosed with high blood pressure, and placed on medical leave, which was extended until November 28, 2011. *Id.* at 6, 8,

43. On November 2, 2011, while Echols was absent, LCF conducted a performance evaluation. *Id.* at 8.[6]

On November 7, 2011, Echols filed her first Equal Employment Opportunity Commission ("EEOC") charge. ECF No. 1-2 at 12. On November 9, 2011, the EEOC dismissed the charge, concluding that Echols had not established any statutory violations. *Id.* at 38.

On November 28, 2011, Echols returned to work. ECF No. 1 at 8. She reviewed her November 2, 2011 performance evaluation, but refused to sign it because it "contained liars [*sic*]," and accused her "of not being a team player." *Id.* 8-9.[7]

---

[6] On November 2, 2011, Echols spoke with Zell about her extended absence, and was informed that a meeting had been held to determine whether Echols could be fired. ECF No. 1 at 8. Zell was instructed to complete Echols's performance evaluation. *Id.* Zell apparently stated that she gave Echols a positive rating for "cooperation/working cohesively," but that Sandler told her to change it to a negative rating. *Id.* at 8-9. Zell has since left LCF; when the EEOC interviewed Zell, she stated that Echols was "a good worker," but was constrained from further comment by her confidentiality agreement with LCF. ECF No. 1-2 at 2.

[7] The evaluation assigned Echols, *inter alia*, a rating of "4"-- "exceeds expectations"--in work quality, job knowledge, and written communication; but "2"--"below expectations"--for cooperation/working cohesively. *Id.* at 39-40. Echols received an overall score of "3"--"meets expectations." *Id.* at 40. The evaluation recommended that Echols "improve her ability to deal with work-related issues that apparently cause frustration to her, especially in regard to maintaining positive working relationships with co-workers in the accounting team." *Id.* at 39. It further instructed her to work on "accepting other's ideas," "avoiding being critical," "'tuning out' noise [and] opinions . . . that she finds distracting," "accepting situations at work without becoming emotional," and "gain[ing]

5

Six weeks before Echols was fired, LCF hired Archie Reed-an African American--to replace Zell. *Id*. at 9.  On January 20, 2012, before leaving LCF, Zell wrote Echols a letter of recommendation; Zell stated that Echols "always conducts herself with professionalism and as a team player with co-workers."  ECF No. 1-2 at 36.  Zell further stated that Echols was "a very hardworking, competent and reliable employee" who "possesses excellent accounting and analytic skills."  *Id*.

On January 26, 2012, "based on additional information obtained," the EEOC reopened its investigation into Echols's allegations of discrimination.  *Id*. at 35.[8]  However, on March 15, 2012, Echols withdrew the charges.  ECF No. 1 at 10; ECF No. 1-2 at 33.  Marika Pinkett, Director of Human Resources, had told Echols that Scott Raymond, Vice President of LCF, "was

---

an understanding of how her work impacts other areas of the organization."  *Id*. at 41.  Zell told Echols that she had placed a letter in Echols's employment file to counter the negative statements in the evaluation.  ECF No. 1 at 9.  Although it is not clear, the "letter" appears to be a performance evaluation conducted by Echols's former employer, MedStar Health.  *Id*.; *see also* ECF No. 1-2 at 44-52.  That evaluation characterized Echols as an "exceptional team player," whose "strongest competency is contribution to team effectiveness."  ECF No. 1-2 at 50.

[8] The EEOC Charge number is 846-2012-06986.  *Id*. at 35.

upset that [Echols] had filed the EEOC charges."   ECF No. 1 at 10.[9]

On March 16, 2012, Sandler overheard Echols say "Go to hell!" while listening to the radio sermon "White Throne Judgment."   *Id.*   Sandler asked Echols to refrain from speaking those words, and Echols apologized.   *Id.*[10]

On March 22, 2012, Sandler overheard Echols say "Amen" while softly praying.   *Id.*   Sandler spoke with Reed, who informed Echols that Sandler--who was Jewish--and other staff-- who were atheists--found her religious words offensive.   *Id.* Reed told Echols to refrain from saying "Amen, God, Jesus or Lord" while at work.   *Id.*

On March 23, 2012, Echols arrived late to a staff meeting, and without having read an email discussing the meeting's purpose.   *Id.*   At the meeting, it became apparent that Echols and Wadalavage were duplicating tasks.   *Id.*   During the discussion, Echols accused Wadalavage of lying, stating that "the truth was not in her," and that Wadalavage was "conjuring events that had not taken place."   *Id.*

---

[9] Although Raymond wanted Echols to drop the charges, Pinkett informed Echols that she had the right to pursue the EEOC charges.   ECF No. 1 at 10.

[10] Echols was permitted to listen to religious sermons on headphones, but would occasionally shout out responses, such as "Burn in hell!"   ECF Nos. 1-2 at 7; 8-1 at 4.

On March 29, 2012, at approximately 1:45 p.m., Reed asked Echols to check certain 2011 depreciation expenses. *Id.* at 11. Instead of completing the request, Echols informed Reed that "the information was readily available" in the 2011 Audit file located on the share drive, and went to lunch. *Id.* Later that afternoon, Echols mumbled "Shoo!" and "Jesus" while recording data entries. *Id.* Echols's mumbling bothered some co-workers, who complained to Sandler. ECF No. 8-1 at 6. Sandler sent an email to the entire Accounting Department about workplace conduct, and asked employees to acknowledge receipt of the email. *Id.* Every employee, except Echols, responded. *Id.*

On March 30, 2012, Sandler fired Echols "for causing problems in the Accounting Department" and not getting along with co-workers. ECF No. 1 at 11. Sandler also accused Echols of ignoring his email requesting a meeting with her the day before. *Id.*[11] On April 2, 2012, when Echols returned to LCF to collect her personal items, Pinkett told Echols she was fired because she "did not fit in." *Id.* at 12.[12]

On April 18, 2012, Echols renewed her EEOC Charge, alleging race and religious discrimination. ECF Nos. 8-1 at 6; 1-2 at 2.

---

[11] According to Echols, she did not respond because she was trying to get a Human Resources representative to attend the meeting. ECF No. 1 at 11.

[12] After Echols was fired, her "duties were absorbed by the existing members of the accounting staff." ECF No. 8-3.

Following its investigation, the EEOC was unable to conclude that LCF had violated any statute.  ECF No. 1-2 at 17-18.  On July 30, 2013, the EEOC dismissed Echols's charge and issued a "right-to-sue" letter.  *Id.* at 1.[13]

On October 23, 2013, Echols filed a complaint against LCF, alleging retaliation for filing the EEOC charge, and discrimination on the basis of her race and religion, in violation of Title VII.  ECF No. 1 at 1-4.[14]  Echols also alleged that LCF had violated an unspecified GINA provision.  *Id.* at 12.[15]  On March 18, 2014, LCF filed this unopposed motion to dismiss for failure to state claim, and for lack of subject matter jurisdiction, or, for summary judgment.  ECF No. 8.

---

[13] On August 4, 2013, Echols asked the EEOC to reconsider its dismissal of her charge; on August 15, 2013, the EEOC declined. ECF No. 1-2 at 52.

[14] Echols seeks back pay, $65,000 monetary damages, and punitive damages for physical and mental anguish.  ECF No. 1 at 4.

[15] Echols made this allegation in response to LCF's EEOC Charge position statement, which stated that Echols's charge "lacks any basis in reality."  *Id.* at 12; *see also* ECF No. 1-2 at 5. According to Echols, because she was under psychiatric care during her tenure at LCF, LCF's statement is "discriminatory against the medical treatment [she] received."  ECF No. 1 at 12.

9

II.   Analysis

    A.   Title VII Claims

       1.   Legal Standard for Summary Judgment

LCF's motion is captioned as a motion to dismiss under Rule 12(b)(6)[16] or, in the alternative, for summary judgment under Rule 56.[17]   A motion with this caption implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).   However, under Rule 12(d), the Court, in its discretion, may consider matters outside the pleadings; if the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."   Fed. R. Civ. P. 12(d).[18]   When the movant expressly

---

[16] Fed. R. Civ. Pro. 12(b)(6).

[17] Fed. R. Civ. Pro. 56.

[18] A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice and Procedure § 1366, at 159 (3d ed. 2004, 2011

captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), Echols was informed of her right to file a response to the Motion, and the opportunity to submit affidavits, declarations, and other documentary evidence. *See* ECF No. 10. As noted, she has not filed a response. The Court will construe the motion as one for summary judgment.

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

[19] Rule 56(a), which "carries forward the summary[]judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

(1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the opposing party must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp.*, 477 U.S. at 322-23.  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

   2.   LCF's Motion

  LCF asserts it is entitled to summary judgment because Echols has not established a *prima facie* case of discrimination or retaliation; and if she has, she cannot show that the articulated reasons for her termination were pretextual.  ECF No. 8-1 at 9-13.

   i.   Discrimination Claim

  Under Title VII, it is unlawful for an employer "to discharge . . . any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] religion."  42 U.S.C. § 2000e-2(a)(1)(2012).

  A plaintiff can prove her employer's discrimination through one of two methods.  *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004)(en banc).  First, she may use "any direct or indirect evidence relevant to and

sufficiently probative of the issue," under "ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal quotation marks omitted).  To avoid summary judgment, the plaintiff must produce "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (alteration in original) (internal quotation marks omitted).

Absent direct evidence of discrimination, the Court applies the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[20]  Under that framework, the plaintiff must first establish a *prima facie* case of discrimination.  *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010).  To establish a *prima facie* case, Echols must show that: "(1) she is a member of a protected

---

[20] Because Echols has produced no direct evidence of discrimination--"evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision"--she must proceed under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 1824-26, 36 L. Ed. 2d 668 (1973).  *See, e.g., Phair v. Montgomery Cnty. Pub. Sch.*, 3 F. Supp. 2d 644, 647 (D. Md. 1997) *aff'd,* 141 F.3d 1159 (4th Cir. 1998) (*quoting Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995) *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (internal quotations omitted)).

class;[21] (2) she suffered adverse employment action;[22] (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Hill*, 354 F.3d at 285.

If the plaintiff establishes a *prima facie* case, "a presumption of illegal discrimination" arises, and the burden of production shifts to the employer to articulate a nondiscriminatory reason for its adverse decision. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

"If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981), and the *McDonnell Douglas* framework "drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The plaintiff must then prove by a preponderance of the evidence that "the proffered reason was not the true reason for the employment decision," and that the true reason was discrimination. *Burdine*, 450 U.S. at 256. She may do this

---

[21] Echols is in a protected class under Title VII, because she is African-American. *See* ECF No. 1 at 5; *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994).

[22] Echols suffered an adverse action when she was fired. *See McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991).

directly or indirectly, by "persuading the court that a discriminatory reason more likely motivated the employer" or by showing that the employer's explanation is "unworthy of credence." *Id*.

LCF contends that Echols was not meeting its legitimate expectations when she was fired. ECF No. 8-1 at 9-10. On this point, the evidence is mixed. On November 2, 2011, LCF's performance evaluation indicated that--overall--Echols was meeting expectations; however, she was not meeting expectations on working cohesively with others--the reason given for her termination. ECF No. 1-2 at 39-40. Echols refused to sign the evaluation because it "contained liars [*sic*]." ECF No. 1 at 8-9. On January 20, 2012, Zell wrote Echols a positive recommendation, noting that she "always conducts herself with professionalism and as a team player." ECF No. 1-2 at 36.

Zell's recommendation is diminished, however, in light of Echols's conduct at the March 23, 2012 staff meeting: by her own admission, she arrived late, unprepared, and, in front of the entire Accounting Department, accused Wadalavage--with whom Echols clearly did not get along--of being a liar. ECF No. 1 at 10. On March 29, 2012, Echols refused Reed's request to perform an immediate task, and instead went to lunch. *Id*. at 11. Echols failed to respond to Sandler's email about appropriate

workplace conduct, and his email requesting a meeting.  *Id.*; ECF No. 8-1 at 6.

Echols has failed to establish a *prima facie* case of race or religious discrimination because, by her own admissions about work performance and arguments with co-workers, she has failed to demonstrate that she was meeting LCF's expectations when she was fired.  *See Hill*, 354 F.3d at 298; *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515-516 (4th Cir. 2006)(evidence of poor work performance is appropriately considered at the *prima facie* stage).[23]  Had Echols established a *prima facie* case, she would not prevail because LCF has articulated a legitimate, non-discriminatory reason for firing Echols--causing problems in the Accounting Department and not getting along with others--which Echols has not rebutted.  *See id*.  Accordingly, LCF is entitled to summary judgment on the discrimination claim.

### ii.  Retaliation Claim

To establish a *prima facie* case of retaliation, Echols must show 1) that she engaged in a protected activity;[24] 2) her

---

[23] Echols has also failed to establish a *prima facie* case because her duties were absorbed by other Accounting staff; the position did not remain open, and LCF did not fill the position with someone outside the protected class.  ECF No. 8-3.

[24] Filing an EEOC charge is a protected activity.  *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998).

employer took an adverse employment action against her;[25] and 3) there was a causal link between the protected activity and adverse action. *E.E.O.C v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005); *see also* 42 U.S.C. § 2000e-3(a). Unlike substantive discrimination claims that only require that discriminatory animus be a motivating factor, the plaintiff in a retaliation suit must establish that the adverse employment action would not have occurred absent the protected activity. *See Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2533 (2013).

To avoid summary judgment, Echols must show "a conflict in substantial evidence" on whether LCF would have fired her "but for" the protected activity. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). If a *prima facie* case is made, the burden shifts to LCF to articulate a legitimate, non-retaliatory reason for the adverse action. *Hill*, 354 F.3d at 298; *Taylor v. Republic Servs., Inc.*, 968 F. Supp. 2d 768, 796 (E.D. Va. 2013), *appeal dismissed* (May 20, 2014). If LCF meets its burden, Echols must prove by a preponderance of the evidence that the legitimate reasons offered by LCF were a mere pretext for unlawful

---

[25] *See supra* note 22.

retaliation. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.
133, 143 (2000).

On November 7, 2011, more than four months before she was
fired, Echols filed her first EEOC charge.[26]  A four-month period
between the protected activity and the adverse action is
insufficient to establish retaliation.  *See Clark Cnty. Sch.
Dist. v. Breeden*, 532 U.S. 268, 273 (2001)(temporal proximity
must be "very close") (citation omitted).  However, on January
26, 2012, the EEOC reopened its investigation.  ECF No. 1-2 at
33.  Although "'[b]ut for' causation ... cannot be established
by temporal proximity alone," *Staley v. Gruenberg*, 575 F. App'x
153, 156 (4th Cir. 2014)(unpublished)(per curiam)(*quoting
Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th
Cir.)), the Vice President of LCF "was upset" about the EEOC
charge and wanted it dropped.  ECF No. 1 at 10.  Taking Echols's
evidence as true, and drawing all reasonable inferences in her
favor, *Anderson*, 477 U.S. at 255, Echols has "satisfie[d] the
less onerous burden of making a *prima facie* case of causality."
*Taylor*, 968 F. Supp. 2d at 798 (citation omitted)(emphasis
added).

As discussed above, however, Echols's retaliation claim
fails because she has not presented evidence to rebut LCF's

---

[26] Two days later, that case was dismissed by the EEOC.  ECF No.
1-2 at 12, 38.

nonretaliatory reason for her termination.  *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)("Other than the fact that at the time she was fired her supervisors were aware that she had filed a discrimination claim, appellant has produced no other evidence of retaliation. Plainly, mere knowledge on the part of an employer that an employee [] is about to [file] a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee."). Accordingly, LCF is entitled to summary judgment on the retaliation claim.

B.   GINA Claim

1.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991).  In determining whether it has jurisdiction, a court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Id.*  When the court lacks subject matter jurisdiction, "the proper course [is] to dismiss the claim instead of granting summary judgment on it."  *Kobraei v. Alexander*, 521 F. App'x 117, 118 (4th Cir. 2013)(*quoting Laber v. Harvey,* 438 F.3d 404, 414 n. 5 (4th Cir. 2006)).

2.   LCF's Motion

LCF contends that Echols has failed to exhaust her administrative remedies on her GINA claim;[27] thus, the Court lacks subject matter jurisdiction.  ECF No. 8-1 at 14-15.

GINA claims are subject to Title VII exhaustion requirements.  *See* 42 U.S.C. §§ 2000ff-6(a)(1), 2000e-5(e)(1).  "It is well-settled that a plaintiff must exhaust her administrative remedies before filing a lawsuit under Title VII."  *Kobraei*, 521 F. App'x at 118 (*citing Chacko v. Patuxent Inst.*, 429 F.3d 505, 513 (4th Cir. 2005)).  A plaintiff exhausts her administrative remedies by filing an EEOC charge and obtaining a "right-to-sue" letter; failure to do so "deprives the federal courts of subject matter jurisdiction over the claim."  *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th

---

[27] GINA "prohibit[s] discrimination on the basis of genetic information with respect to health insurance and employment." Pub. L. No. 110-233, § 2, 122 Stat. 881 (2008).  To state a GINA claim, a plaintiff must allege that an employer unlawfully "fail[ed] or refus[ed] to hire, or . . . discharge[d], any employee, or . . . discriminated against any employee . . . because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(2012).  "[G]enetic information" includes (1) an individual's genetic tests; (2) the genetic tests of the individual's family members; (3) the manifestation of a disease or disorder of the individual's family members; (4) an individual's request for, or receipt of, genetic services, or the participation in clinical research that includes genetic services by the individual or the individual's family member; and (5) the genetic information of a fetus. *See* 42 U.S.C. § 2000ff(4)(A); *see also* 29 C.F.R. § 1635.3(c).

Cir. 2009); *Davis v. N. Carolina Dep't of Correction*, 48 F.3d 134, 140 (4th Cir. 1995).

A complaint filed in court may raise "claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)(age discrimination claim barred when EEOC charge alleged sex discrimination).[28]

Echols alleges--in a conclusionary fashion--that LCF's statement that her EEOC charge "lacked any basis in reality" discriminated against her on the basis of genetic information because she was receiving psychiatric care.  ECF No. 1 at 12.

---

[28] *See Jones*, 551 F.3d at 301 (failure to exhaust administrative remedies when second EEOC charge alleged retaliation for filing first EEOC charge, which alleged age, sex, and race discrimination, but which was resolved by written agreement, and complaint filed in connection with second EEOC charge alleged age, sex, and race discrimination); *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132-33 (4th Cir. 2002) (failure to exhaust administrative remedies when EEOC charge based on race discrimination, and complaint alleged retaliation and discrimination based on race, color, and sex); *Chacko*, 429 F.3d at 511 (failure to exhaust administrative remedies when EEOC charges alleged harassment by supervisors not based on national origin, and complaint alleged hostile work environment based on national original epithets by coworkers).  *But see Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593-94 (4th Cir. 2012)(EEOC charge and complaint reasonably related when both alleged denial of reasonable accommodation for disabled plaintiff; EEOC charge involved denial of lighter duty work when plaintiff had limited walking ability and used an electric wheelchair when having to walk for an extended time, and complaint involved denial of full duty work with wheelchair assistance).

Echols's EEOC charge involved race and religious discrimination; it did not involve genetic discrimination.  *See* ECF No. 1-2 at 17.  Accordingly, Echols has not exhausted her administrative remedies on her GINA claim, and the Court lacks subject matter jurisdiction over it.[29]   Echols's GINA claim will be dismissed.  *See Kobraei*, 521 F. App'x at 118

## III. Conclusion

For the reasons stated above, LCF's motion for summary judgment on Echols's discrimination and retaliation claims, and its motion to dismiss Echols's GINA claim for lack of subject matter jurisdiction, will be granted.

_____12/2/14_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[29] *See supra* note 28 and accompanying text.